## NATIONAL LABOR RELATIONS BOARD v. JACOBS MFG. CO.
### No. 169, Docket 22219.

United States Court of Appeals Second Circuit.

Argued March 4, 1952.

Decided May 9, 1952.

George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Frederick U. Reel and Samuel M. Singer, all of Washington, D. C., Attorneys, National Labor Relations Board, for petitioner.

Walfrid G. Lundborg and Shipman & Goodwin, all of Hartford, Conn., for respondent Jacobs Mfg. Co.

Before L. HAND, AUGUSTUS N. HAND and CHASE, Circuit Judges.

CHASE, Circuit Judge.

On July 15, 1948, the respondent and the representative of its employees, Local 379, United Automobile, Aircraft and Agricultural Implement Workers of America, CIO, hereinafter called the union, executed a collective bargaining agreement affective for two years. It contained a clause which provided that, "After the expiration of one year from the date hereof either party may request a meeting after fifteen days written notice, the purpose of which shall be to discuss wage rates of employees covered by this agreement." During the negotiation of this contract certain changes in an existing group insurance program were discussed but nothing on that subject was put into the agreement. The subject of pensions for employees was not even discussed.

On July 15, 1949, the union formally exercised its right under the above quoted clause and, in its written notice to the respondent, requested a wage increase together with changes in the group insurance program and the adoption of a pension plan.

When the parties first met to discuss these demands, the respondent took the firm position that it could not raise wages because business conditions made it financially unable to do so. It refused to negotiate at all as to the subject of changes in the group insurance program and the setting up of a pension plan on the ground that neither of those subjects were within the scope of the reopening clause in the contract. The union requested permission to examine the respondent's books and sales records for the preceding year to "prove to the people in the plant that the company was not" able to increase wages but the respondent refused to furnish any such information on the ground that the determination of this question was a matter solely within its own business judgment. At a subsequent meeting of the parties there was substantially a repetition of what had transpired at the first meeting. Following that, the union made numerous requests for further meetings because it had "a great many arguments to offer both on wages and the workers' security" but the respondent declined, stating that its position remained unchanged and that the union should communicate "such new and different thoughts * * * in writing to us so that we may answer them by letter or in a meeting as requested by you."

On these facts, the Board held that the respondent had refused to bargain in good faith in violation of § 8(a) (1) and (5) of the Act, 29 U.S.C.A. § 158 (a) (1) and (5), by refusing to meet and confer with the union after the second bargaining conference; by refusing to furnish the union with any information to support its position that it was financially unable to grant the re-

quested wage increases; and by refusing to discuss the question of pensions.[1]

Decision as to enforcement turns upon the validity of the following parts of the order:

"2. (a) Upon request bargain collectively with [the union] * * * with respect to rates of pay, wages, hours of employment, including the subject of a pension plan or program * * *."

"(b) Upon request furnish (the union) with such statistical and other information as will substantiate the Respondent's position in bargaining with the Union."

▆▆▆▆ The respondent contends that it was under no statutory duty to confer with the union after the second meeting since all of the issues had been fully explored and the position of both parties expressed. Whether this was true, however, was a question of fact which the Board found adversely to the respondent. Since at both the meetings the respondent took the position that discussion of wage increases would be futile because it was financially unable to make them, and since it refused to discuss the other subjects at all, the Board was justified in concluding that the respondent had refused to bargain in good faith as the Act requires. Collective bargaining in compliance with the statute requires more than virtual insistence upon a prejudgment that no agreement could be reached by means of a discussion. Section 8(d) of the Act defines "collective bargaining" as the "obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith". This means cooperation in the give and take of personal conferences with a willingness to let ultimate decision follow a fair opportunity for the presentation of pertinent facts and arguments. This affirmative obligation was not satisfied by merely inviting the union to submit written offers for a settlement, nor by the bare assertion of a conclusion made upon facts undisclosed and unavailable to the union which was not acceptable without a presentation of sufficient underlying facts to show, at least, that the conclusion was reached in good faith. N.L.R.B. v. P. Lorillard Co., 6 Cir., 117 F. 2d 921, reversed on other grounds, 314 U.S. 512, 62 S.Ct. 397, 86 L.Ed. 380; Cf. Globe Cotton Mills v. N.L.R.B., 5 Cir., 103 F.2d 91. Consequently, we hold that the respondent's conduct amounted to an unfair labor practice and that it was lawfully required by the order to bargain with the union upon request as to wage rates and hours of employment.

Furthermore, other than as above stated there had been no bargaining at all. Unless the respondent was right in its position that it could lawfully refuse to bargain as to pensions because the existing contract did not contain a reopening clause broad enough to include that subject, it is clear that its refusal to bargain as to them was also an unfair labor practice. We do not think the respondent could lawfully refuse. Before the National Labor Relations Act was amended by the Taft-Hartley Act an employer was under a duty, upon request, to bargain with the representatives of his employees as to terms and conditions of employment whether or not an existing collective bargaining agreement bound the parties as to the subject matter to be discussed. See N.L.R.B. v. Sands Mfg. Co., 306 U.S. 332, 342, 59 S.Ct. 508, 83 L.Ed. 682. However, § 8(d) of the amended Act, 29 U.S. C.A. § 158(d), narrowed this requirement by providing that the duty to bargain collectively " * * * shall not be construed as requiring either party to discuss or agree to any modification of the terms and conditions contained in a contract for a fixed period, if such modification is to become effective before such terms and conditions can be reopened under the provisions of the contract * * *." The respondent's position is that, except as to subjects ex-

---

1. A majority of the Board thought that § 8(d) of the Act, 29 U.S.C.A. § 158(d), absolved the respondent from the duty to bargain concerning group insurance since that matter had been discussed during the negotiations leading up to the contract. Therefore, the order sought to be enforced does not require the respondent to bargain as to insurance and we need not pass upon the correctness of this interpretation of § 8(d).

684

pressly reserved for further negotiations in a reopening clause, any fixed period contract creates a static period in the entire industrial relationship between the employer and his employees, for the term of the contract, even as to aspects of that relationship which were not covered by that contract or even discussed in the negotiations leading up to it.

 We, however, agree with the Board that § 8(d) cannot fairly be given such a broad effect. The purpose of this provision is, apparently, to give stability to agreements governing industrial relations. But, the exception thus created necessarily conflicts with the general purpose of the Act, which is to require employers to bargain as to employee demands whenever made to the end that industrial disputes may be resolved peacefully without resort to drastic measures likely to have an injurious effect upon commerce, and the general purpose should be given effect to the extent there is no contrary provision. Since the language chosen to describe this exception is precise and explicit, "terms and conditions contained in a contract for a fixed period," we do not think it relieves an employer of the duty to bargain as to subjects which were neither discussed nor embodied in any of the terms and conditions of the contract. Therefore, we hold that it was the respondent's statutory duty to bargain on the subject of pensions. In so deciding, however, as we have already indicated in commenting upon the Board's ruling concerning the group insurance issue, we do not intend to pass upon the effect, if any, on the duty to bargain, of mere previous discussion of a subject without putting any terms and conditions as to it into the contract.

There remains for consideration the validity of that part of the order which requires the respondent to substantiate its position, by furnishing information to the union, that it was financially unable to meet the union's demands. While we have not previously dealt with the precise question now raised, we think the rationale of our decision in N.L.R.B. v. Yawman & Erbe Mfg. Co., 2 Cir., 187 F.2d 947, covers this situation. We have already decided that the respondent did not fulfill its duty to bargain collectively when it refused to disclose pertinent facts to show that it had, in good faith, reached its decision that it could not afford to meet the union demands. We do not understand this part of the order to require the respondent to do more than show its good faith in bargaining collectively. To bargain collectively in compliance with the statute does not mean that an employer must produce proof to establish that he is right in his business decision as to what he can, or cannot, afford to do. He is left free to decide that himself and, at the end of the bargaining, may agree only insofar as he is willing in the light of all the circumstances. See § 8(d). The Board's order does not require the respondent to produce any specific business books and records but information to "substantiate" its position in "bargaining with the Union." As we interpret this, the requirement of disclosure will be met if the respondent produces whatever relevant information it has to indicate whether it can or cannot afford to comply with the Union's demands.

Enforcement granted.