**LOCAL NO. 423, INTERNATIONAL UNION OF MINE, MILL & SMELTER WORKERS**

v.

**ANACONDA AMERICAN BRASS COMPANY, TORRINGTON DIVISION.**

Civ. No. 9083.

United States District Court
D. Connecticut.

April 6, 1962.

Gruber & Turkel, by Samuel Gruber, Stamford, Conn., for plaintiff.

Larkin & Pickett, by William J. Larkin, II, Waterbury, Conn., for defendant.

BLUMENFELD, District Judge.

The defendant Anaconda American Brass Company, Torrington Division, hereafter Anaconda, operates three plants in three different cities in Connecticut, in each of which a different union is the bargaining representative for the employees. Each one of the three separate collective bargaining agreements between the respective unions and Anaconda contains the following provision:

> "Transfer between Divisions in different cities will result in no loss of plant-wide seniority."

The plaintiff Local No. 423, International Union of Mine, Mill & Smelter Workers, hereafter Mine Workers, alleges that Anaconda breached its collective bargaining agreement by denying full plant seniority to those whom it re-employed at its Anaconda plant in Waterbury, after transferring machinery and equipment from its Torrington plant to its Waterbury plant, where the same work was continued thereafter, and by refusing to call back the other employees whom it had laid off in Torrington.

After answering the complaint, Anaconda now moves under Rule 14(a) for permission to implead the United Steelworkers of America, AFL-CIO and Local Union No. 6445, United Steelworkers of America, of Ansonia, hereafter Steelworkers, and Local 1078, International Union, United Automobile, Aircraft & Agricultural Implement Workers of America, of Waterbury, hereafter U. A. W., by serving a summons and third party complaint upon them. This complaint, in brief, alleges that during the effective term of the several bargaining agree-

ments, the two proposed third party unions threatened it with strike action unless Anaconda agreed to modifications of their respective bargaining agreements, which would deprive former Torrington employees, whom it might transfer to the Waterbury or Ansonia plants, of full plantwide seniority, and that, as a result of those threats, it was compelled to and did enter into letter agreements with each of them, acceding to their demands. Since both letter agreements are essentially the same, only the earliest one is noted in the margin.[1] The discussion which follows can be related to both third party defendants.

Although Anaconda's answer denies that it has breached the collective bargaining agreement with the plaintiff, it alleges in its third party complaint that if it did breach that contract it was induced to do so by the necessity of complying with the letter agreements which are the product of the third party unions' strike threats. It pleads that it will be unable to carry out any decree requiring compliance with the Mine Workers' contract without violating the tainted letter agreements.[2]

■ Whether a claim by defendant against the proposed third parties which will fit within the scope of Rule 14, F.R. Civ.P., 28 U.S.C.A., may be found among these allegations is the question which must be determined. Rule 14(a) is explicit in its direction that the party impleaded must be one who is or may be liable to the defendant:

"A defendant cannot assert an entirely separate claim against a third party under Rule 14 even though it arises out of the same general set of facts as the main claim; there must be an attempt to pass on to the third party all or part of the liability asserted against the defendant." 3 Moore, Federal Practice, ¶14.07, pp. 418–419 (2d Ed.); United States v. Scott, D.C.S.D.N.Y., 1955, 18 F.R.D. 324, 326; Rosalis v. Universal Distributors, D.C.Conn., 1957, 21 F.R.D. 169, 172.

■ The defendant contends that the facts set forth in the third party complaint state a cause of action for malicious interference with the contract between the plaintiff and the defendant, citing Ran W. Hat Shop, Inc. v. Sculley, 1922, 98 Conn. 1, 118 A. 55, 29 A.L.R. 551. The cause of action for malicious interference as recognized in Connecticut and in other jurisdictions, Cf. Restatement of Torts, §§ 766 et seq., gives to the promisee injured by a breach of contract the right to recover damages from the one who induced the breach.

No case or authority has been cited by Anaconda in support of its contention

1. "For the purpose of certain transfers of employees which the Company desires to make from the Torrington Division to Waterbury, the effect of Sec. 19 of Art. VIII of the existing contract between the Company and Local 1078, UAW is mutually understood to be as follows:
"1) Such employees will carry their plantwide Seniority from Torrington Division so as to protect their right to such benefits provided by the Waterbury contract as pensions, length of vacations with pay, and insurance.
"2) These employees will not be able to use their plantwide service acquired in Torrington to displace or cause the layoff of any Waterbury employees, or to otherwise obtain preference to job assignments or vacation periods; but they will acquire seniority in Waterbury in accordance with their Waterbury service. In all other respects, also, they will have all the rights of an employee in the Waterbury bargaining unit. They will not, however, be required to serve an additional probationary period.
"3) No such transfers will be made while employees on the recall lists at Waterbury, or in the bargaining unit of the affected Division, are available and able to do the required work if the latter wish such assignment."

2. This claim is not considered with respect to whether or not it contains any thing of merit as a defense to the plaintiff's cause of action. Compliance with that contract would not appear to be legally impossible, and union coercion to induce Anaconda to violate it is probably not relevant. N. L. R. B. v. Hudson Motor Car Co., 6 Cir., 1942, 128 F.2d 528; N. L. R. B. v. Bell Aircraft Corp., 2 Cir., 1953, 206 F.2d 235.

that the one induced has a right to reimbursement or contribution against the inducer. As will be seen later, the merit of this contention must, for this case, be tested by federal substantive law.

■■ Although independent jurisdictional grounds are not regarded as necessary in order to entertain a third party action, Dery v. Wyer, 2 Cir., 1959, 265 F.2d 804, the advantages of ancillary proceedings do not operate to enlarge jurisdiction over subject matter which, as governed by statute, lies only within the exclusive jurisdiction of the National Labor Relations Board. Amazon Cotton Mill Co. v. Textile Workers Union, 4 Cir., 1948, 167 F.2d 183. While ordinarily the existence of a substantive right against the third party would be tested under state law, San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236, at p. 247, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), forbids it in cases touching interests regulated by national policy in the field of labor management relations.

"The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy. Even the States' salutary effort to redress private wrongs or grant compensation for past harm cannot be exerted to regulate activities that are potentially subject to the exclusive federal regulatory scheme. See Garner v. Teamsters Union, 346 U. S. 485, 492–497 [74 S.Ct. 161, 98 L. Ed. 228]. It may be that an award of damages in a particular situation will not, in fact, conflict with the active assertion of federal authority. The same may be true of the incidence of a particular state injunction. To sanction either involves a conflict with federal policy in that it involves allowing two law-making sources to govern. In fact, since remedies form an ingredient of any integrated scheme of regulation, to allow the State to grant a remedy here which has been withheld from the National Labor Relations Board only accentuates the danger of conflict."

■ The first step in the development of Anaconda's claim against the third parties is its contention that the letter agreement is invalid. One ground relied upon is that the defendant resorted to threat of strike action prohibited under 29 U.S.C.A. § 158(d) in order to procure a modification of the existing collective bargaining agreement to the extent set forth in the letter agreement.

The purpose of § 158(d) has been explained in N. L. R. B. v. Jacobs Mfg. Co., 2 Cir., 1952, 196 F.2d 680 by Judge Chase at p. 684:

"The purpose of this provision is, apparently, to give stability to agreements governing industrial relations. But, the exception thus created necessarily conflicts with the general purpose of the Act, which is to require employers to bargain as to employee demands whenever made to the end that industrial disputes may be resolved peacefully without resort to drastic measures likely to have an injurious effect upon commerce, and the general purpose should be given effect to the extent there is no contrary provision. Since the language chosen to describe this exception is precise and explicit, 'terms and conditions contained in a contract for a fixed period,' we do not think it relieves an employer of the duty to bargain as to subjects which were neither discussed nor embodied in any of the terms and conditions of the contract."

What may be regarded as any "modification of the terms and conditions contained in a contract" prohibited under 29 U.S.C.A. § 158(d) has been shown in Local Union No. 9735 etc. v. N. L. R. B., 1958, 103 U.S.App.D.C. 294, 258 F.2d 146, where the court pointed out at p. 149:

"Section 8(d) requires the retention of 'all the terms and conditions'

of an existing contract 'without resorting to strike or lock-out' for a period of sixty days after notice to terminate or modify the contract is given. 'Section 8(d) thus seeks during this natural renegotiation period, to relieve the parties from the economic pressure of a strike or lockout in relation to the subjects of negotiation.' Mastro Plastics Corp. v. N. L. R. B., 350 U.S. 270, 286, 76 S.Ct. 349, 359, 100 L.Ed. 309. Section 8(d) does not apply, however, where the attempt is not to modify the terms of an agreement, ibid, cf. United Elec. Radio & Machine Workers of America (U. E.), Local 1113 v. N. L. R. B., 96 U.S.App.D.C. 46, 49–50, 223 F.2d 338, 341–342, but is to obtain an objective which the agreement has not settled. N. L. R. B. v. Jacobs Mfg. Co., 2 Cir., 196 F.2d 680, 683–684." And see: N. L. R. B. v. Sands Mfg. Co., 306 U.S. 332, 342, 59 S.Ct. 508, 83 L.Ed. 682 (1939).

To resolve the question of whether there was an unlawful modification requires something other than mere legal interpretation of the language of the letter agreement when read as an insertion into the context of the original agreement. Insofar as its claim is based on an unfair labor practice, the necessity of determining circumstances surrounding the inception of the original agreement arises, and these are matters peculiarly within the expertise of the National Labor Relations Board. See N. L. R. B. v. Jacobs, supra. To the extent that the conduct upon which Anaconda relies to seek relief is arguably within the compass of § 8, this court would have no power to act. 359 U.S. at 245, 79 S.Ct. 773, 3 L.Ed.2d 775.

There remains, however, Anaconda's additional contention that the letter agreement with U. A. W. must be invalidated because it was obtained as a consequence of U. A. W.'s violation of the collective bargaining agreement. A suit for violation of that agreement would fall within the purview of § 301

(a) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185, and would be cognizable by this court. Charles Dowd Box Co., Inc. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483.

While San Diego Unions v. Garmon, supra, precludes this court from granting a remedy for nonviolent tortious conduct under state law which might arguably also constitute an unfair labor practice this does not mean that the parties may not, by voluntary choice, make an enforceable bargain to refrain from this same conduct. In this latter instance, the court could undertake jurisdiction which otherwise would be prohibited under § 8 without incurring jurisdictional conflict with the National Labor Relations Board.

"Since this was a suit for violation of a collective bargaining contract within the purview of § 301 (a) of the Labor Management Relations Act of 1947, the pre-emptive doctrine of cases such as San Diego Building Trades Council, etc. v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, based upon the exclusive jurisdiction of the National Labor Relations Board, is not relevant. * * * [citations omitted] * * * It is, of course, true that conduct which is a violation of a contractual obligation may also be conduct constituting an unfair labor practice, and what has been said is not to imply that enforcement by a court of a contract obligation affects the jurisdiction of the N. L. R. B. to remedy unfair labor practices, as such. * * *" Local 174, Teamsters, etc. v. Lucas Flour Co., 82 S. Ct. 571.

Reaffirmation in Local 174, Teamsters etc., supra, at pp. 8 & 9 of the mandate of Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed. 2d 972 (1956), compelling the courts to fashion a body of substantive federal law for the enforcement of collective bargaining agreements from the principles of federal labor law eliminates the risk of the development of state law

which would be incompatible with federal labor policy. Whether the threat of strike action was in fact "violative of both the existing collective bargaining agreements between Anaconda and third party defendants * * *" as alleged in its proposed third party complaint, so as to substantiate the breach of contract aspect of Anaconda's claim, cannot be determined since neither the agreements nor the pertinent provisions have been filed. Decision of that question and the others which will be precipitated in the event of an affirmative answer must await an orderly procedure which cannot begin until the summons and complaint have been served upon the proposed third party defendants.

The motion for permission to serve the summons and complaint upon the proposed third party defendants is granted.

IT IS SO ORDERED.