**Leo BROWN and John Lane, Individually and on behalf of all former hourly employees of Lakey Foundry Corporation who have accrued vested rights in the Lakey Foundry Corporation Pension Plan, Plaintiffs,**

v.

**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), Defendant and Cross-Plaintiff,**

v.

**A. S. HANSEN, INC., Cross-Defendant.**

**No. G–185–73 CA 6.**

United States District Court,
W. D. Michigan, S. D.

Jan. 30, 1980.

Arthur M. Rude, James R. Seastrom, Muskegon, Mich., for plaintiffs.

A. Robert Kleiner, Grand Rapids, Mich., for defendant Union.

Peter J. Armstrong, Grand Rapids, Mich., for cross defendant Hansen.

## OPINION

HILLMAN, District Judge.

This class action arises from the claim of former employees of the now bankrupt Lakey Foundry Corporation against the UAW on a claim of a breach in its duty of fair representation. The issue presently before the court by various motions and cross-motions concerns the right of the plaintiffs and defendant UAW to add A. S. Hansen, Inc., an actuary firm as an additional party defendant and/or third-party defendant and/or cross-defendant. Hansen is vigorously contesting all these efforts.

## BACKGROUND

The following facts are not in dispute. Plaintiffs are former members of Local 403 of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW). On August 7, 1973, the plaintiffs (former employees of Lakey Foundry Corporation, the "Company") filed a class action against the UAW.

Plaintiffs represent the class of all former hourly employees of Lakey with vested rights to recover pension benefits because of any deficiency of funds. The gravamen of the complaint was that the UAW had breached its duty of fair representation and contractual obligations by failing to adequately police the payment of contributions by Lakey to the Lakey Foundry Corporation Pension Plan ("Pension Plan") pursuant to the terms of the Pension Agreement. Employees sought to hold the Union liable for a funding deficit in the Pension Plan. The same causes of action were stated in plaintiffs' second amended complaint, dated May 28, 1975, although additional specific instances of the breaches were alleged.

On December 13, 1973, Judge Fox of this court determined that the lawsuit was a class action under Rule 23 of the Federal Rules of Civil Procedure, and certified the class as consisting of all former hourly employees of Lakey who are members of the collective bargaining unit represented by the UAW and who had accrued vested rights under the Pension Plan. The class of plaintiffs shall hereafter be referred to as the "Employees".

In 1959, Lakey, the UAW and Local 403 agreed to a substantial revision of the hourly employee Pension Plan. The 1959 amendments increased pension benefits and required Lakey to contribute to the pension fund an annual amount sufficient to meet the costs of benefits earned during the current fiscal year, plus a sufficient amount to fund over a period of 40 years a deficiency that had existed from January 1, 1956, and a past service cost that arose from the granting of the increased benefits. In addition, the 1959 agreement provided for the establishment of a Board of Administration consisting of six members, three appointed by Lakey and three by the UAW. Among the Board's duties were: (1) receipt analysis of reports on the assets, receipts and disbursements of the Pension Plan; (2) receipt of an annual report from a Coordinating Committee on the operation and administration of the Plan; (3) receipt of an annual report of the expenditures for the adminis-

tration of the Plan; and (4) evaluation and analysis of data regarding the actuarial assumptions used in determining minimum contributions of Lakey under the agreement. Lakey was required to furnish to the Board an annual statement certified by an actuary that the amount of the assets of the .Plan was not less than the amount required by the agreement to be in the Plan. The remaining relevant facts are outlined here in approximate chronological order:

1. It is undisputed that as early as 1966, Lakey was in financial difficulty and this fact was known at least to the UAW, if not the plaintiffs themselves. At that time, Lakey was financially unable to obtain Workmen's Compensation Insurance coverage and was able to continue its self-insured status only through a special arrangement for the deposit of funds in escrow negotiated with the Workmen's Compensation Department. Plaintiffs and the UAW had an active part in these negotiations and approved the arrangement.

2. In February, 1968, the UAW requested that Lakey Foundry furnish a copy of a recent actuarial report prepared by A. S. Hansen, Inc., the actuarial firm hired by the Company. Lakey furnished Hansen's 25-page Actuarial Valuation Report for the year ended October 31, 1966. The report was reviewed by the UAW's Actuarial Consultant. It showed a "funding deficit to end of year" of $216,824.00.

3. In 1969 and 1970, with the consent of plaintiffs and the UAW, Lakey borrowed money from the Workmen's Compensation escrow fund established in 1966. The borrowing was to finance capital expenditures.

4. At a meeting on July 8, 1971, Lakey's attorney, James Hale, disclosed to Plaintiffs' Bargaining Committee and UAW International Representative Scott and Assistant Regional Director Rogers that Lakey had not made the pension contributions .due October 31, 1970, in the amount of approximately $500,000, and would not be able to make the larger contributions that would fall due October 31, 1971. In paragraph 22 of its cross-complaint, the UAW

acknowledges that it was informed of the $1,200,000 deficit on July 8, 1971.

5. One of the persons in attendance at the meeting during which the disclosure was made was Victor Scott, the UAW International Representative assigned to Lakey. His notes show that at the meeting, Hansen was identified as Lakey's actuary and was discussed in connection with the disclosure of delinquent contributions. Thereafter, on August 6, 1971, the president of Local 403 made a report on the July 8 meeting to a regular meeting of the membership of Local 403 and the report was accepted.

6. Lakey ceased doing business on February 4, 1972, and filed a petition for bankruptcy under Chapter XI of the Bankruptcy Act on February 7, 1972. The Pension Plan was declared terminated as of October 13, 1972, by the Muskegon County Circuit Court. Defendant filed unsecured claims with the Bankruptcy Court in the amount of $6.5 million, the total amount required to pay off all accrued benefits, of which $1.2 million represented the deficit as of the date of termination.

Plaintiffs claim that defendant UAW violated its duty of fair representation in the following ways:

(a) Failure to require Lakey to comply with the requirement of the Pension Agreement for reporting on the status of assets and contributions to the Pension Fund;

(b) Failure to ascertain that after the 1964 fiscal year an increasing fund deficit was accruing in the Plan;

(c) Failure to take action to insure that Lakey was maintaining its contribution despite knowledge of Lakey's serious financial problem;

(d) Failure to establish a procedure for routine review of either pension reports required to be filed by Lakey or actuarial violations;

(e) Failure to detect the existence of a funding deficit even when copies of actuarial reports were received from Lakey;

(f) Failure to pursue legal remedies against Lakey's officers and directors despite knowledge that defendant may have been defrauded by them;

(g) Failure to pursue legal remedies against the actuaries hired by Lakey despite knowledge that actuaries may have submitted false or misleading reports.

Plaintiffs seek damages in an amount equal to the funding deficit that existed as of the date the Plan was terminated.

The court granted plaintiffs' motion for class action certification on December 18, 1973. Plaintiff filed a second amended complaint in June of 1975 and discovery proceeded throughout the period. On November 4, 1977, following a stipulation entered on the record between plaintiffs and defendant UAW to the addition of a cross-defendant, and an appropriate motion by defendant, the court ordered A. S. Hansen, Inc., to be joined as cross-defendant. During the following few months, several motions were filed by the parties. Currently pending before the court are:

(1) Plaintiffs' motion to add A. S. Hansen, Inc., as an additional party defendant and for leave to file a third amended complaint;

(2) A. S. Hansen's motion to vacate the November 4, 1977, order adding A. S. Hansen, Inc., as cross-defendant and to strike UAW's cross-complaint against Hansen, or in the alternative, for summary judgment on the cross-complaint for the reason the claims are barred by the applicable statute of limitation.

Plaintiffs' motion for leave to file the third amended complaint was brought pursuant to Rule 15 of the Federal Rules of Civil Procedure. Plaintiffs desire the opportunity to change their second amended complaint by adopting in full as their Count II, the allegations contained in the cross-complaint of UAW against Hansen. Hansen has filed a response in opposition to the motion. Plaintiffs have withdrawn proposed Counts III and IV.

## DISCUSSION

A. *A. S. Hansen's Motion to Vacate Order Adding it as Cross-Defendant and to Strike Cross-Complaint.*

■ Defendant's motion to add Hansen as a cross-defendant was made pursuant to Rule 13(h) of the Federal Rules of Civil Procedure. Rule 13(h) permits persons other than those made parties to the original action to be made parties to a cross-claim in accordance with the provisions of Rules 19 and 20. It is well established, however, that the cross-claim must include as cross-defendant at least one existing co-party. An additional party, such as Hansen, may not be brought in where the cross-claim is directed solely against the new party. Wright & Miller, *Federal Practice and Procedure*, ¶ 1435, at 188–89. Since Hansen was the sole cross-defendant in the UAW's cross-complaint, it has not been added properly under Rule 13(h).

■ Hansen is properly a party to this action, if at all, only pursuant to Fed.R. Civ.P. 14(a). That section provides that an original defendant may file a complaint, as a third-party plaintiff, against a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. The third-party plaintiff may only bring such a claim, however, "when the third-party plaintiff (defendant's) liability is in some way dependent on the outcome of the main claim or when the third-party is secondarily liable to defendant. The secondary or derivative liability notion is central . . . .." Wright & Miller, *supra*, ¶ 1146.

In its cross-complaint, the defendant UAW alleges that Lakey, for and on behalf of the Pension Plan, executed a contract with Hansen whereby Hansen would perform the actuarial services required by the 1959 Pension Agreement. Hansen received payment for its services from the pension fund. Defendant further alleges that by contracting with Lakey to perform actuarial services with respect to the Pension Plan, Hansen undertook to act on behalf of the Plan, and assumed a fiduciary duty to fully

inform all parties connected with the Plan as to its financial status. Hansen allegedly failed to fulfill its contractual obligations and to uphold its fiduciary duty by not preparing the certification that Lakey was making sufficient contributions to the Plan or, if such certification was not warranted, by failing to notify the Trustee, the Board of Administration, and defendant that Lakey was delinquent in its contributions. As a result of Hansen's actions, defendant contends that it, as well as plaintiffs and the Board, were prevented from being in a position to take whatever remedial steps that might have been available. Moreover, defendant claims Hansen filed reports with Lakey that were inadequate and misleading as to the status of the assets in the fund, thus further violating its duty under the agreement and its fiduciary responsibilities to defendant, plaintiffs and the Board.

The question facing the court is whether defendant UAW is alleging in its cross-complaint that Hansen is or may be secondarily or derivatively liable to it for any loss it may suffer in the primary dispute. Such liability would have to be based on a theory of indemnity or contribution since subrogation and warranty clearly are not involved under the facts of this case. Hansen must, therefore, be deemed a proper third-party defendant under either an indemnity or contribution theory in order to warrant joinder in this action. Such a third-party relationship, moreover, must be implied either in law or in fact since no express indemnity or contribution contracts have been shown to exist.

█ The doctrine of indemnity rests on the proposition that when one is compelled to pay money or discharge a duty which in justice should have been paid or discharged by another, the payor may recover from the other unless barred by the wrongful nature of his conduct. In order to successfully bring a third-party complaint under an indemnity theory, of course, the applicable substantive law must provide for indemnification rights. Neither the National Labor Relations Act nor the Labor Management Relations Act expressly provides for indemnification. Accordingly, the court must look to Michigan law to determine whether defendant has implied indemnification rights against Hansen.[1]

█ The basic notion of indemnity under Michigan law corresponds with the general principle stated above. The party seeking indemnity must plead and prove freedom on his part from personal fault. *See Husted v. Consumers Power Company*, 376 Mich. 41, 135 N.W.2d 370 (1965). This has been inter-

1. The general rule is that a third-party defendant's liability to the defendant, if predicated on a contribution or indemnity theory, must be determined under applicable state law, even though jurisdiction in the main case is based on a federal statute as it is here. 3 *Moore's Federal Practice* ¶ 14,03[3] n. 6. *See Kennedy v. Pennsylvania R. R. Co.*, 282 F.2d 705, 709 (3d Cir. 1960). A significant exception to that rule has developed in cases brought under the federal securities laws. In *Globus, Inc. v. Law Research Service, Inc.*, 287 F.Supp. 188 (S.D.N.Y. 1968), *aff'd*, 418 F.2d 1276 (2d Cir. 1969), it was held that the issue of indemnity in securities cases is one to be determined under federal law, and that the public policy behind the Securities Act of 1933 and the Securities Exchange Act of 1934 dictated that indemnity is unavailable. In another phase of the same case, reported at 318 F.Supp. 955 (S.D.N.Y.1970), *aff'd on opinion below*, 442 F.2d 1346 (2d Cir. 1971), and in the earlier case of *deHaas v. Empire Petroleum Co.*, 286 F.Supp. 809 (D.Colo.1968), *aff'd in part and vacated in part on other grounds*, 435 F.2d 1223 (10th Cir. 1970), it was held that the subject of contribution under the securities acts is governed by federal law, and that contribution is available. It is now generally recognized that federal law controls under these types of cases. *See, e. g., Wassel v. Eglowsky*, 399 F.Supp. 1330 (D.Md.1975), *aff'd*, 542 F.2d 1235 (4th Cir. 1976); *B & B Investment Club v. Kleinert's, Inc.*, 391 F.Supp. 720 (E.D.Pa.1975); *Gould v. American-Hawaiian Steamship Co.*, 387 F.Supp. 163 (D.Del.1974). *See generally* Ruder, *Multiple Defendants in Securities Law Fraud Cases: Aiding and Abetting, Conspiracy, In Pari Delicto, Indemnification and Contribution*, 120 U.Pa.L.Rev. 597 (1972). Similarly, it has been held that federal law governs the right to contribution in antitrust cases, *Sabre Shipping Corp. v. American Presidential Lines*, 298 F.Supp. 1339 (S.D.N.Y. 1969); *Professional Beauty Supply v. Nat. Beauty Supply*, 594 F.2d 1179 (1979), though courts have split on the availability of contribution. No cases have been found which suggest a similar exception under the federal labor laws and, accordingly, the general rule will apply to facts of this case.

preted to mean the party seeking indemnity must be free from active or causal negligence. *Nanasi v. General Motors Corp.*, 56 Mich.App. 652, 224 N.W.2d 914 (1974). In *Provencal v. Parker*, 66 Mich.App. 431, 239 N.W.2d 623 (1976), the court stated that:

> Since indemnification is founded upon equitable principles, a claim for indemnity will only lie against the party guilty of "active" negligence. Such a claim arises where two parties are liable to the injured person, but the injury results from a violation by one of the dut[ies] which he owes to the injured person. As between the two tortfeasors the act or omission of the one from whom indemnity is sought must be the primary cause of the injury. *Id.*, at 431, 239 N.W.2d at 625.

In the present case there can be no question that no right of indemnity exists. Plaintiffs have alleged that defendant violated the duties imposed upon it by the federal labor laws to fairly represent its members. The gravamen of the complaint is that defendant failed to discover that the pension fund suffered from a significant deficit and that no efforts were undertaken even to monitor Lakey's contributions to the fund or to protect plaintiffs' rights under the pension agreement. It is clear that these allegations imply active or causal negligence on the part of the defendant, and that the damages suffered by plaintiffs, if any, resulted directly from defendant's acts of omissions. This is not a case wherein a third party's actions were the primary cause of an injury for which defendant is being blamed. It differs, therefore, from *Local No. 423, International Union of Mine, Mill & Smelter Workers v. Anaconda American Brass Co.*, 204 F.Supp. 93 (D.Conn.1962), where it was held that defendant company, sued for breach of a collective bargaining

agreement, could properly implead a third-party union on the grounds that the third party defendant caused any alleged breach by threatening strikes in violation of its own collective bargaining agreements with Anaconda.

■ This view comports with the general understanding that a "defendant cannot assert an entirely separate claim against a third party under Rule 14 even though it arises out of the same general set of facts as the main claim; there must be an attempt to pass on to the third party all or part of the liability asserted against the defendant." 3 *Moore's Federal Practice* ¶ 14.07 at 418–9.

■ It is evident that any claim defendant might have against Hansen is "an entirely separate claim," and that the liability asserted against defendant by plaintiff is not capable of being passed on to a third-party. Indeed, in its brief in opposition to Hansen's motion to vacate defendant states that "this is an independent claim and properly one which gives this court jurisdiction of Hansen as a cross-defendant."

■ Contribution, on the other hand, rather than attempting to pass on complete liability to a third party, attempts to pass on a pro-rata portion of the liability to a party who is partly responsible for the plaintiff's injury. In the case at bar, the language of defendant's cross-complaint clearly suggests that defendant contemplates indemnity rather than contribution, for the prayer requests judgment for the full amount of damages by plaintiff. However, even if defendant were seeking contribution, it would not be available. Again, looking at Michigan law, contribution is provided by statute.[2] In 1974, the Michigan

---

2. As noted in note 1, *supra*, courts have permitted contribution in securities cases as a matter of federal law.

It appears that this case is distinguishable from the securities law cases. The securities laws include express provisions for contribution under some sections of the acts. After recognizing these express provisions the courts have concluded that " 'contribution should be permitted when liability is implied under Sec-

tion 10(b).' . . . This is simply a pertinent application of the general principle that the two statutes are to be administered *in pari materia.*" *Globus, supra*, 318 F.Supp. at 958, *quoting deHaas, supra*, at 815–16. *See* III L. Loss, *Securities Regulation* 1739–40 n. 178 (1961). The labor laws involved here contain no provisions for contribution which can serve as a starting point for the implication of that right in these circumstances. Second, and more fun-

Legislature altered the applicable law, *see* M.C.L.A. § 600.2925a, but provided that "provisions of this amendatory act shall apply to torts committed on or after January 1, 1975." As a consequence of the fact that the new act is not retroactive, the former provisions are applicable here insofar as the alleged wrongdoing by Hansen occurred prior to January 1, 1975.

M.C.L.A. Section 600.2925 provides in relevant part:

> (1) Requisites and amount. Whenever a money judgment has been recovered jointly against 2 or more defendants in an action for bodily injury or death resulting therefrom, or property damage, and such judgment has been paid in part or in full by 1 or more of such defendants, each defendant who has paid more than his own pro rata share is entitled to contribution with respect to the excess so paid over and above the pro rata share of the defendant or defendants making such payment. Joint tort-feasors who are summoned in as third party defendants pursuant to court rule may likewise be liable for contribution. . . .

It is clear under Michigan law that in the present case, the defendant and Hansen are not joint tort feasors as that term is used in Section 2925. *See Moyses v. Spartan Asphalt Paving Co.*, 383 Mich. 314, 174 N.W.2d 797 (1970); *Sobotta v. Vogel*, 37 Mich.App. 59, 194 N.W.2d 564 (1971). The two parties did not "owe to another the same duty and by their common neglect of that duty such other is injured." *Moyses, supra*, 174 N.W.2d at 803. Rather, their potential liabilities arise out of variant legal positions, and their acts were independent, clearly not in concert. It is evident, moreover, that defendant and Hansen had no common obligation to plaintiffs. Under the very terms of the complaint and cross-complaint, liability of defendant rests upon an alleged violation of a statute while Hansen's alleged

liability sounds in tort. Defendant's duty towards plaintiffs was one of fair representation. Hansen's duty, if one existed at all, was based upon contract and the responsibilities it accepted as a fiduciary. Since defendant and Hansen are not joint tort feasors, contribution is not permissible.

■■■■ The foregoing analysis was based on a very liberal reading of defendant UAW's cross-complaint. A restrictive and perhaps more realistic view would lead this court to conclude that defendant does not base its claim on any alleged secondary liability of Hansen at all, nor is the cross-complaint dependent upon the outcome of the main claim. Defendant does not pray for relief for itself, but rather "for the benefit of all persons who have rights under said Pension Plan in accordance with its terms . . . ", to wit, the plaintiffs. It is well settled that "a third party may be impleaded only on the grounds that it is liable to the defendant, and not on the grounds that it, as well as the original defendant, may be liable *to the plaintiff*." *Murray v. Reliance Insurance Company*, 60 F.R.D. 390, 391 (D.Minn.1973), citing 3 *Moore's Federal Practice*, ¶ 14.15. Under this more literal interpretation of the defendant's cross-complaint, the conclusion is compelled that either defendant is seeking impleader for liability to plaintiff or defendant is attempting to bring a third party into this action on an independent claim which, although factually related to the principal dispute, cannot be said to be derivative of the outcome of the main claim. Neither position is permissible under Rule 14(a). In light of the foregoing, the court holds it is not necessary to decide the merits of Hansen's alternative motion for summary judgment.

**B.** *Plaintiffs' Motion to Add A. S. Hansen as an Additional Defendant.*

Plaintiffs actually have two motions pending before the court. The first seeks

---

damentally, the defendant and Hansen do not owe a common duty to plaintiffs—a *sine qua non* to the availability of contribution under any law. *In the securities cases both defendants and third-party defendants were deemed to be under an identical duty to plaintiff which*

arose under the securities laws. Here, as discussed in the text, the duties of defendant and Hansen do not arise under the same statute, and, indeed, are based on variant legal theories. Thus, even if federal law were applicable, the result would be the same under these facts.

to file a third amended complaint. The second seeks to join Hansen as an additional party defendant. In Count II of their proposed third amended complaint, plaintiffs adopt the allegations contained in defendant's cross-complaint as their claim against Hansen. Basically, they view that count as one for breach of fiduciary obligation.

██ Rule 21 of the Federal Rules of Civil Procedure provides that parties may be added by order of the court on motion of any party at any stage of the action. There are frequently problems with respect to the statute of limitations, however, and Hansen has argued that any claims asserted by plaintiffs against it are barred. Irrespective of whether the statute has run at the time the new parties are sought to be added, it is well established that "if the prerequisites prescribed in Rule 15(c) have been met, the addition of a party under Rule 21 should relate back and prevent the successful interposition of a statute of limitations defense." Wright & Miller, *Federal Practice and Procedure*, § 1689.

Rule 15(c) provides:

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him. . . .

██ The Sixth Circuit dealt with a problem identical to the one facing this court in *Marlowe v. Fisher Body*, 489 F.2d 1057 (6th Cir. 1973). It was stated there that "an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations . . . . The 1966 amendment to Fed.R.Civ.P. 15(c) which permits correction of misnomers does not permit the addition or substitution of new parties." *Id.* at 1064. *Accord, Smart v. Ellis Trucking Co., Inc.*, 580 F.2d 215 (6th Cir. 1978). On this authority, the addition of Hansen as a new party subjects plaintiff's proposed amended claim to the relevant statute of limitations. This interpretation of the 6th Circuit appears highly restrictive. Rule 15(c), in addition to correction of misnomers, would appear to permit the relation back of an amendment that provides for addition of a different defendant if the conditions set forth in the rule are satisfied. Under the facts of the present case, the first condition, that is that the claim must arise out of the conduct, transaction or occurrence set forth in the original pleading would appear to be met. It is the second and third conditions which create difficulties. It must appear that Hansen had received sufficient notice of the institution of this action prior to the running of the statute of limitations that it will not be prejudiced in maintaining a defense, and that Hansen knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against it. Thus, even if a less restrictive interpretation of Rule 15(c) seems appropriate, it is the conclusion of this court that these conditions have not been satisfied here and that the claims against Hansen in the amended complaint may not, therefore, relate back to the date that the original complaint was filed. There simply is no indication that a mistake was made concerning the identity of the proper defendant, or even assuming that such a mistake was made, that Hansen had any knowledge of it.

It is necessary, therefore, to examine the statute of limitations question. If the statute has expired for any of plaintiffs' claims against Hansen, such claims may not properly be included in an amended complaint. Count II of plaintiffs' proposed third

amended complaint makes the same allegations against Hansen that are included in the UAW's cross-claim. It is alleged that Hansen breached a fiduciary duty it owed the plaintiffs by failing to inform them of the deficits in the Lakey pension fund. That claim sounds in tort but it is also contended that Hansen breached its obligation under the Pension Agreement. Thus, it would appear that there are both tort and breach of contract claims being made against Hansen.

■ The contract claim is one under state, not federal, law. The Third Circuit's recent decision in *Nedd v. U. M. W.*, 556 F.2d 190 (3rd Cir. 1977), is inapposite under the facts of this case. The appropriate provision under Michigan law with respect to the contract claim is M.C.L.A. § 600.-5807(8), which establishes a six-year period of limitations for actions such as this to recover damages for breach of contract.[3] The statute begins to run at the time the claim accrued. M.C.L.A. § 600.5827. Whether the cause of action accrues at the time of the actual breach, *see Williams v. Polgar*, 391 Mich. 6, 215 N.W.2d 149 (1974), or at the time the breach was discovered by plaintiffs, *see Borman's Inc. v. Lake State Development Co.*, 60 Mich.App. 175, 230 N.W.2d 363 (1975), it seems apparent that plaintiffs' contract claim arose no later than July of 1971. Plaintiffs and defendant concede that the defendant and some of the plaintiffs were informed of the funding deficit at a collective bargaining meeting held on July 8, 1971. It is also conceded that the alleged breach occurred prior to that date.

In order to avoid the expiration of the statute of limitations, therefore, it must appear either that the claim accrued sometime after July 8, 1971, or that the running of the statute was tolled for some period of time. It has been argued with respect to

the first point that the doctrine set forth in *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971), controls here. In *Zenith*, the Supreme Court held that in the context of a private antitrust action, a claim accrues at the time damages are suffered, even if the statute has run on the original unlawful conduct, if at the time of that conduct future damages were too speculative. Subsequent lower court decisions, however, have refused to extend *Zenith* beyond the area of antitrust treble damages recovery for lost profits, *see Fitzgerald v. Seamans*, 180 U.S.App.D.C. 75, 553 F.2d 220 (D.C.Cir. 1977), and the doctrine is clearly not applicable to the breach of contract claim such as that present here.[4]

With respect to the second point, it need only be noted that the doctrine does not contemplate that the statute is tolled, but that a defendant is estopped from raising the statute as a defense if plaintiff has been inequitably induced to refrain from commencing his action until the statute has expired. Plaintiffs here cannot make that argument inasmuch as even if they were induced to refrain from filing suit between the time they discovered the deficit on July, 1971, and the date of Lakey's bankruptcy in February, 1972, sufficient time still remained in which the action could have been filed before the expiration of the period of limitations.

■ All parties agree that plaintiffs' tort claims are controlled by M.C.L.A. Section 600.5805(7), which establishes a three-year statute of limitations for actions to recover damages in most tort cases. It is well settled in Michigan that in an action of this type the statute does not begin *running* until the point where the plaintiff knew or should have known of the commission of the

---

**3.** Even if the contract claim arose under federal law, Michigan's statute of limitations applies. *U. A. W. v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966).

**4.** It is not contended by either plaintiffs of the U.A.W. that the *Zenith* doctrine applies to

causes of action arising under state law. Insofar as the contract claims here arise under state, not federal, law, *Zenith* is not controlling. The discussion in the text indicates, however, that even if the claim were deemed federal in nature, the *Zenith* doctrine is inapplicable.

tortious conduct.[5] *Williams v. Polgar*, 391 Mich. 6, 215 N.W.2d 149, (1974). Hansen contends that plaintiffs possessed such knowledge at least since the July 8, 1971, meeting at which the funding deficit was revealed. Plaintiffs argue that they did not discover that Hansen owed them a fiduciary duty until late 1976 or early 1977, when it was learned that Hansen had been paid from pension funds. Plaintiffs' claim is not supportable. The crux of plaintiffs' breach of fiduciary duty claim is that Hansen failed to inform plaintiffs of the existence of the funding deficit. When it became clear in July, 1971, that such a deficit existed, plaintiffs knew or should have known that Hansen had failed to meet its fiduciary duty. They were aware then that Lakey had not been making the required payments into the pension fund but that Hansen had not informed them of that fact. The discovery of the source of the funds used to pay Hansen is irrelevant to the fiduciary duty issue. The existence of a fiduciary duty depends on the nature of the relationship between the parties. Assuming arguendo that Hansen owed fiduciary duty to plaintiffs, that duty arose as a result of Hansen's responsibilities with respect to the pension agreement, not because Hansen was paid from pension funds. Indeed, both the UAW and plaintiffs have stated that because of Hansen's skills and expertise in the area of pension plan funding and its knowledge of the plan's financial status, they justifiably placed trust and confidence in Hansen and relied on Hansen to keep them informed as to the plan's financial status. Plaintiffs' claims, and by reference the UAW's claims, against Hansen are barred by the operation of the Michigan statutes of limitation.

In light of the foregoing, the following actions are hereby taken:

1) the court vacates the Order of November 4, 1977, and strikes the defendant UAW's cross-complaint against A. S. Hansen, and

2) the court denies plaintiff's motions for leave to file a third amended complaint with respect to A. S. Hansen and to add A. S. Hansen as a party defendant.

IT IS SO ORDERED.

---

**5.** The law is settled that an agent's knowledge is chargeable to his principal. Accordingly, if an agent possesses sufficient knowledge with respect to a potential tort claim, the principal is similarly deemed to possess such knowledge. *See, e. g., Chelsea Assoc. v. Rapanos*, 527 F.2d 1266, 1269 (6th Cir. 1975); *Klein v. Bower*, 421 F.2d 338, 343 (2d Cir. 1970). Under the circumstances of this case, the U.A.W. was clearly plaintiffs' agent with respect to the activity in question. Thus, any references hereinafter to plaintiffs' knowledge assumes that either plaintiffs or their agent possessed such knowledge.