**Sidney Y. WEAR, Plaintiff,**

v.

**The WEBB COMPANY, Defendant.**

Civ. No. 3–82–1619.

United States District Court,
D. Minnesota,
Third Division.

Oct. 25, 1983.

1258

Jerry W. Snider, Elizabeth L. Taylor, Faegre & Benson, Minneapolis, Minn., for plaintiff.

Daniel R. Wachtler, Dennis J. Merley, Felhaber, Larson, Fenlon, Vogt, St. Paul, Minn., for defendant.

## MEMORANDUM AND ORDER

DEVITT, Senior District Judge.

In this action for sex discrimination brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-3 *et seq.*, and comparable provision of the Minnesota Human Rights Act, the principal issues are whether defendant publishing company discriminated against its former female employee in the making of a promotion and in her pay and working conditions. We are governed by *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981), in the apportionment of the burden of proof in Title VII actions.

Plaintiff was sought out and hired by Webb Publishing Company in March 1977 as Circulation Development Manager for *The Family Handyman,* a magazine published by defendant. Webb had sought an experienced magazine circulation director, but, unsuccessful in that, hired plaintiff with the thought her direct mail and promotional talents would be useful and that she would learn the circulation work. Her assigned mission was to get more subscribers for the magazine. Plaintiff started at $19,000 per year. She claims she was promised an increase to $25,000 within a year and that she would be made Circulation Manager of any additional magazines acquired by Webb.

In September 1978, Webb acquired another magazine, *The Family Food Garden,* and in November 1978 hired Toby Roux, a male, as Circulation Manager of it at a higher salary ($27,000) than plaintiff was then receiving ($22,000). In March 1979, Webb appointed Roux as Circulation Manager of both magazines. As part of the department reorganization, plaintiff was to report to Roux. Plaintiff was given an increase in salary to $25,000 per year. Plaintiff viewed this change as a demotion for her and a breach of Webb's promise to appoint her Circulation Manager of both magazines. She said she could not serve in the suggested position subordinate to Roux and resigned on April 6, 1979. She claims she resigned at Webb's request and was constructively discharged. Webb denies asking for her resignation and claims her resignation was voluntary.

This law suit followed. Jurisdiction is established. Trial was to the court for six days starting October 3, 1983. Fourteen witnesses testified. Briefs and suggested Findings of Fact and Conclusions of Law were lodged. Argument was heard.

*Discrimination in Promotion*

 The Webb Company, when reorganizing its family magazine publishing operations in March 1979 made the decision to promote Toby Roux, a male, rather than Sidney Wear, a female, as Circulation Manager of *The Family Handyman* and *The Family Food Garden.* The issue here is whether, as claimed by plaintiff, this pro-

motion decision was discriminatory as to plaintiff Wear under federal and state law.

The plaintiff, a college graduate (B.A., M.B.A.), worked in seven different positions prior to coming to work for Webb in March 1977. Four of those jobs were in direct mail marketing. She had no prior experience in magazine circulation work. It is apparent from performance appraisals of her work made in 1977, 1978 and 1979 (Plfs. Ex. 9, 10 and 11) that plaintiff's performance as Circulation Development Manager of *The Family Handyman* was highly regarded by her superiors. Circulation of the magazine increased markedly from 1976 to 1979. Plaintiff claims credit for this increase. Although recognizing plaintiff's contributions to it, Webb attributes most of the increase to the efforts of its direct mail agent, Publisher's Clearing House, which conducted extensive promotional offers and sweepstakes by mail. Several fellow employees expressed high regard for plaintiff's competence.

Toby Roux had extensive experience in magazine circulation work with *Cricket, Harpers* and *International Review of Food and Wine* before joining Webb in 1978. His performance appraisal during his shorter tenure at Webb was not as high as Mrs. Wear's. Several witnesses expressed favorable opinions of Roux's competence and especially his training and experience in statistics, his work with Webb's fulfillment house,[1] and his ability to organize and administer a magazine renewal program.

Defendant's stated reason for reorganization of its family magazine operations was the perceived need to have one overall supervisor who would control renewal efforts and work with the fulfillment house. Its reason for appointing Roux over Wear as Circulation Manager was that Roux was more competent to do the job. The evidence showed that Roux had extensive

training and background in statistical and computer programming, very helpful in working with the fulfillment house and in conducting a renewal circulation effort. Mrs. Wear did not have that background. Her forte was in promotional and creative work. Her experience was mostly in direct mail marketing.

Throughout Mrs. Wear's employment at Webb it was apparent that the relationship with the fulfillment house in matters of scheduling and statistical work on *The Family Handyman* had been a troublesome source of problems. The evidence shows these problems were in part caused by Mrs. Wear's inadequacies in these fields. By March 1979 the circulation renewal talents of Roux were needed. At the same time Webb wanted the promotional and creative talents of Mrs. Wear on both magazines. Hence the desire of management to keep both Wear and Roux in its employ but all under the supervision of Roux whom Webb considered better suited for the post. Two hired consultants to Webb, J. Wendell Forbes and Richard Benson, were of the view that Roux was better qualified and so advised Webb. Each of the consultants had extensive experience in magazine circulation work. They said Wear did not understand and did not adapt to the magazine circulation field, particularly the conversion and renewal aspects of it. The same view was expressed to Webb by Ray Schoenfeld, one-time executive of Neo Data Services, Webb's fulfillment house. Schoenfeld had had almost daily contact with plaintiff in Neo Data's fulfillment work. He testified that it was apparent from her performance that plaintiff was not experienced in circulation work. He said she just didn't understand scheduling, mailing and statistical aspects of her job. Plaintiff's performance in these areas was inadequate.

1. Webb used Neo Data Services to handle the fulfillment responsibilities for *The Family Handyman*. Most magazines hire a fulfillment house to administer the details of circulation. Witness Richard Benson described these responsibilities:

"They receive all mail from the subscribers, open it, bank the money, put the orders on to tape, address all magazines, address all billings, address all renewals and provide reports about all of these things. They also mail the billings and the renewals to the subscribers." (Benson Deposition, p. 40.)

There was no substantial credible evidence to support plaintiff's claim of sex discrimination in the promotion of Roux over Wear. There was testimony by plaintiff that males were treated more favorably than she in assignment of office space and reimbursement for travel on company business but this was not supported or substantiated. The evidence showed that all office accommodations for the staffs of the two magazines were "terrible" due to shortage of space at Webb. Her office was not discriminatorily worse than the others. Statistical evidence was introduced by plaintiff to establish a prima facie case of discrimination in the gender of Webb's employees, but it was not persuasive on the question of discrimination in promotion or pay. But even assuming it was, the court is well satisfied that defendant has articulated, and shown, a nondiscriminatory reason for promoting Roux over Wear—i.e., greater competency—and that plaintiff has not shown this to be pretextual. The evidence shows that Webb's decision to promote Roux over Wear was a permissible business decision. *Heymann v. Tetra Plastics Corp.,* 640 F.2d 115 (8th Cir.1981).

*Discrimination in Pay*

█ It is not disputed that Roux was paid at a higher rate than Wear both at the time when hired and when Mrs. Wear resigned. But the evidence is persuasive that Roux was paid $27,500 when hired in recognition of his demonstrated greater competency, his more extensive prior training and experience in the magazine circulation field (with *Cricket, Harpers* and *International Review of Food and Wine*) and because it was necessary to pay him that to persuade him away from his former employment where he was receiving $32,000 per year. These are permissible reasons for compensating employees at different rates. *EEOC v. Aetna Insurance Co.,* 616 F.2d 719 (4th Cir.1980); *Horner v. Mary Institute,* 613 F.2d 706 (8th Cir.1980). There was no showing that difference in sex was a reason for the difference in pay. Defendant has shown that the disparity in pay was based on factors other than sex.

Although plaintiff was paid at less than the middle ("position") rate while at the same time receiving high performance marks, this does not prove sex discrimination. When hired, it was known that Mrs. Wear had no magazine circulation experience and defendant was justified in fixing her compensation on the basis of her qualifications.

The evidence shows that Mrs. Wear resigned and was not constructively discharged as claimed. It was manifest that Webb wanted to keep plaintiff on, albeit subordinate to Roux. She has not shown discrimination in the assignment of assistants to help her or in authorizing attendance at seminars. It was not proved by the greater weight of the evidence that defendant violated the law.

Mrs. Wear's disappointment at Roux's appointment in preference to her is understandable especially in light of at least implied earlier representations that she would be considered favorably for the post, but that does not spell discrimination. Plaintiff may have been misled in the matter by Webb's failure to be more emphatic in telling Mrs. Wear of her inadequacies.

These expressions are intended to satisfy the requirements of Rule 52(a) of the Federal Rules of Civil Procedure. The Clerk is directed to enter judgment for defendant.