**McINTYRE'S MINI COMPUTER SALES GROUP, INC.,**
Plaintiff/Counter-Defendant

v.

**CREATIVE SYNERGY CORPORATION,**
Defendants/Counter-Plaintiff,

Van Brocklin, Stewart, Mannings, Chalmers, Hanson Data Systems, Inc. and Computer Repair Center, Defendants

and

**COMPUTER REPAIR CENTER,**
Cross-Plaintiffs,

v.

**CREATIVE SYNERGY, Van Brocklin, Stewart and Mannings,**
Cross-Defendants,

and

**CREATIVE SYNERGY CORP.,**
Cross-Plaintiff,

v.

Michael **VAN BROCKLIN** and Kevin Stewart, Cross-Defendants.

No. 86CV70620DT.

United States District Court,
E.D. Michigan, S.D.

July 30, 1986.

Richard A. Rossman, Detroit, Mich., Michael T. Scott, Philadelphia, Pa., for plaintiff.

Francis P. Ortiz, Detroit, Mich., Robert N. Berg, Atlanta, Ga., for Creative Synergy Corp.

Thomas F. Wieder, Ann Arbor, Mich., for Newman.

Robin K. Andrews, Detroit, Mich., Ronald F. Kehoe, Boston, Mass., Edward C. Saltzburg, Woburn, Mass., Robert H. Janover, Bloomfield Hills, Mich., for Hanson Data Systems.

Thomas G. Smith, Rochester, N.Y., for Delta Computer.

Dennis A. Dettmer, Detroit, Mich., for Kevin Stewart.

## MEMORANDUM OPINION AND ORDER

PHILIP PRATT, Chief Judge.

This is an action arising out of the alleged theft of trade secrets from the plaintiff by some of the defendants which were then sold to other of the defendants. The plaintiff filed a multiple-count complaint, charging violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and of Michigan common law. The defendants now move for dismissal pursuant to Fed.R. Civ.P. 12(b)(6).

McIntyre's Mini Computer, the plaintiff, is a distributor of used computer equipment. It maintains a list of accounts, potential customers and other information in a computer program. In November of 1984, plaintiff sought the advice of defendant Creative Synergy, a software consulting firm, regarding possible modifications of its systems. It is alleged that Creative Synergy, through its employees, defend-

ants Michael Van Brocklin, Kevin Stewart, Gerry Manning and Geoffrey Chalmers, stole the plaintiff's confidential customer list in the process of doing work for the plaintiff. The plaintiff claims that the purloined list was then sold to the remaining defendants, Hanson Data Systems ("Hanson"), Delta Computech, Inc. ("Delta"), Computer Repaid Center ("CRC") and Newman Computer Exchange ("Newman").[1]

Six of the eight counts of this complaint allege RICO violations. The defendants are in each count alleged to have violated both the substantive provisions of RICO, 18 U.S.C. § 1962(c), and to have conspired to violate RICO, 18 U.S.C. § 1962(d). Creative Synergy and its employees are named in each count. Delta is named in Count 2, Hanson in Count 3, CRC in Count 4, CRC and Newman in Count 5, and all defendants are named in Count 6.[2] In addition, all the defendants are charged with the misappropriation of trade secrets (Count 7) and fraud (Count 8).

When deciding a motion to dismiss for failure to state a claim upon which relief can be granted brought pursuant to Fed.R. Civ.P. 12(b)(6), the plaintiff's allegations must be accepted as true, and the complaint dismissed only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1983). As the several motions to dismiss are all brought on similar grounds, the court will treat them as one.[3]

■ To state a civil cause of action under RICO, the plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of "racketeering activity" which

---

1. Newman, a Michigan corporation and the only non-diverse defendant in this action has been voluntarily dismissed by the plaintiff. As Newman is not an indispensable party, its dismissal preserves the diversity jurisdiction of this court over the state claims, which are not merely pendent to the federal counts. *See, Reed v. Robilio,* 376 F.2d 392 (6th Cir.1967); *Lopez v. General Motors Corp.,* 697 F.2d 1328 (9th Cir. 1983); *Caperton v. Beatrice Pocahontas Coal Co.,* 585 F.2d 683 (4th Cir.1978); *Samaha v. Presbyterian Hosp. in City of New York,* 757 F.2d 529 (2d Cir.1985).

2. The plaintiff, in its responsive pleadings, has said that it will not oppose CRC's and Hanson's motion to dismiss as to the RICO claims. Accordingly, this court will dismiss the RICO claims against Hanson and CRC. As to the RICO claims, the plaintiff is contesting only the motions of Creative Synergy and its employees.

3. Defendant Delta Computech has not filed a motion to dismiss, and has entered into a stipulation with the plaintiff that it has ten days after receipt of the court's decision as to these motions to file an answer. However, this opinion is equally applicable to the charges against Delta.

has caused injury to the plaintiff. *Sedima, S.P.R.L. v. Imrex Co., Inc.,* — U.S. —, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). On its face, the plaintiff's complaint appears to have met three of the four elements. Creative Synergy, along with its employees, Van Brocklin, Stewart, Manning and Chalmers, arguably operated in the form of an enterprise. The Supreme Court has held that to establish an enterprise under 18 U.S.C. §§ 1961(4) and 1962(c), there must be evidence that the defendants function as a "continuing unit," and that the enterprise must have an existence "separate and apart from the pattern of activity in which it engages." *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). The circuits are divided as to how to interpret the "separate and apart" requirement, with some holding that a RICO enterprise have an ascertainable existence apart from the alleged wrongful conduct, *United States v. Bledsoe,* 674 F.2d 647 (8th Cir.1982), *cert. denied,* 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982); *United States v. Riccobene,* 709 F.2d 214 (3rd Cir.1983), *cert. denied,* 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983); *United States v. Tillett,* 763 F.2d 628 (4th Cir. 1985); *Allington v. Carpenter,* 619 F.Supp. 474 (D.Cal.1985), while others have held that an enterprise existed where it was no more than the sum of the predicate racketeering acts. *United States v. Bagaric,* 706 F.2d 42 (2d Cir.1983), *cert. denied,* 464 U.S. 840, 104 S.Ct. 134, 78 L.Ed.2d 128; *United States v. Weinstein,* 762 F.2d 1522 (11th Cir.1985), *cert. denied* — U.S. —, 106 S.Ct. 1519, 89 L.Ed.2d 917 (1986). This split in authority does not impact this case, as Creative Synergy and its employees certainly form an ongoing enterprise which has an existence separate and distinct from the conduct with which they are charged.

The plaintiff has also properly alleged that the defendants engaged in racketeering activity. Racketeering activity is defined in 18 U.S.C. § 1961 as including any act indictable under certain criminal statutes. The defendants are accused of having used the mails and wire communications to perpetrate their scheme, in violation of 18 U.S.C. §§ 1341 and 1343, and with having transported stolen property in interstate commerce in violation of 18 U.S.C. §§ 2314–15. Violation of any of these statutes are predicate acts to a RICO claim.[4]

The element which poses a problem in this case is that the plaintiff must allege that the defendants engaged in a *pattern* of racketeering activity. 18 U.S.C. § 1961(5) says that a pattern "requires at least two acts of racketeering activity, one of which occurred within ten years ... after the commission of a prior act of racketeering activity." In a rather lengthy footnote, the Supreme Court has invited courts to develop rigorous standards for what constitutes a pattern of racketeering activity.

As many commentators have pointed out, the definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern *"requires* at least two acts of racketeering activity," § 1961(5) (emphasis added), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969) (emphasis added). Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that "[t]he term 'pattern' itself requires the showing of a relationship.... So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern...." 116 Cong.Rec. 18940 (1970) (statement of Sen. McClellan). See also *id.,* at 35193 1984), *cert. denied,* — U.S. —, 106 S.Ct. 259, 88 L.Ed.2d 266 (1985); *United States v. Bohonus,* 628 F.2d 1167 (9th Cir.1980), *cert. denied,* 447 U.S. 928, 100 S.Ct. 3026, 65 L.Ed.2d 1122 (1980).

**4.** It should be noted that the plaintiffs did not adequately plead each element of mail and wire fraud, though the court does not base its decision on this shortcoming in the pleadings. *See, United States v. Green,* 745 F.2d 1205 (9th Cir.

(statement of Rep. Poff) (RICO "not aimed at the isolated offender"); House Hearings at 665. Significantly, in defining "pattern" in a later provision of the same bill, Congress was more enlightening: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguising characteristics and are not isolated events." 18 U.S.C. § 3575(e). This language may be useful in interpreting other sections of the Act. Cf. *Iannelli v. United States*, 420 U.S. 770, 789, 95 S.Ct. 1284, 1295, 43 L.Ed.2d 616 (1975).

*Sedima, S.P.R.L. v. Imrex Co., Inc.,* — U.S. ——, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346.[5] Many lower courts have accepted the Supreme Court's invitation, and have held that where the predicate acts all occurred in the course of a single scheme to defraud the victim, a pattern of racketeering activity had not been established. *Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.*, 615 F.Supp. 828 (N.D.Ill.1985); *Professional Assets Manage. v. Penn Square Bank*, 616 F.Supp. 1418 (D.Okla. 1985); *Allington v. Carpenter*, 619 F.Supp. 474 (D.Cal.1985); *Frankart Distributors, Inc. v. RMR Advertising, Inc.*, 632 F.Supp. 1198 (S.D.N.Y.1986); *Superior Oil Co. v. Fulmer*, 785 F.2d 252, (8th Cir. 1986).

■ The requirement that the predicate acts must have occurred in different criminal episodes is consistent with Congress' intent to exclude isolated criminal conduct from RICO liability. *See Sedima*, 105 S.Ct. at 3285 n. 14. While it is true that Congress intended RICO to reach both legitimate and illegitimate enterprises, *Id.*, RICO ought not be used as a basis for

federal question jurisdiction in every "garden variety" fraud case. As one court has noted, "[m]ost substantial business transactions involved two or more uses of the mail during negotiations. To hold that two such [acts] are sufficient to constitute a 'pattern of racketeering activity' would be to sweep into federal courts, under RICO, the great majority of action for fraud in commercial transactions." *Medallion T.V. Enterprises, Inc. v. SelectV, Inc.*, 627 F.Supp. 1290, (D.C.Cal.1986). This interpretation is also consistent with the plain meaning of the word "pattern."

> True enough, "pattern" connotes similarity, hence the cases' proper emphasis on relatedness of the constituent acts. But "pattern" also connotes a multiplicity of events: Surely the continuity inherent in the term presumes repeated criminal *activity*, not merely repeated *acts* to carry out the *same* criminal activity. It places a real strain on the language to speak of a single fraudulent effort, implemented by several fraudulent acts, as a "pattern of racketeering activity."

*Inryco*, 615 F.Supp. at 831. This court is persuaded by the reasoning of the post-*Sedima* courts adopting a rigorous definition of the term "pattern," and holds that separate acts in furtherance of the same criminal episode or transaction do not constitute a "pattern" of racketeering activity under RICO.[6]

■ Returning to the facts of this case, it is clear that the plaintiff has alleged only one scheme, *viz*, to steal and sell the plaintiff's list which purportedly contains trade secrets. The alleged indictable conduct was all performed in furtherance of this single scheme to appropriate this one item. The conduct of the defendants, assuming

---

**5.** Prior to *Sedima*, most courts had concluded that a pattern could be established merely by showing the commission of two acts of racketeering acitivity withinthe last ten years. *See*, *e.g.*, *United States v. Aleman*, 609 F.2d 298 (7th Cir.1979, *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980); *United States v. Parness*, 503 F.2d 430 (2d Cir.1974), *cert. denied*, 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801 (1975).

**6.** The plaintiff cites several cases which maintain the pre-*Sedima* definition of pattern. Upon review, the court finds that these cases address the issue of merely in dictum, *Alexander Grant & Co., v. Tiffany Industries, Inc.*, 770 F.2d 717

(8th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 799, 88 L.Ed.2d 776 (1986), or they simply apply the statutory definition without seriously considering the Supreme Court's gloss set forth in *Sedima*. *Ill. Dept. of Rev. v. Phillips*, 771 F.2d 312 (7th Cir.1985); *Conan Properties, Inc. v. Mattel, Inc.*, 619 F.Supp. 1167 (D.C.N.Y.1985); *Systems Research, Inc. v. Random, Inc.*, 614 F.Supp. 494 (D.C.Ill.1985). The Fifth Circuit has noted the invitation by *Sedima* to develop a more rigorous definition of pattern, but has declined to express an opinion on the issue. *Smoky Greenshaw Cotton v. Merrill Lynch, Pierce*, 785 F.2d 1274, 1280–81 n. 7 (5th Cir. 1986).

all of the allegations of the complaint to be true, does not amount to a "pattern of racketeering activity." Having failed to plead an essential element of a RICO claim, Counts 1–5 of the complaint must be dismissed.

Count 6 charges all of the defendants with conspiring to violated RICO, in violation of 18 U.S.C. § 1962(d). In criminal cases involving § 1962(d), it has been held that an agreement to violate RICO must be alleged *in addition* to the four elements set forth in *Sedima*. *United States v. Sinito*, 723 F.2d 1250, 1260 (6th Cir.1983), *cert. denied*, 469 U.S. 817, 105 S.Ct. 86, 83 L.Ed.2d 33 (1984). *United States v. Phillips*, 664 F.2d 971, 1012 (5th Cir.1981), *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982). As this court has already dismissed the substantive RICO counts the dismissal of the conspiracy count must follow.

■ The conspiracy count also suffers from "technical" deficiencies. The conspiracy count is set forth in at best broad and conclusory language.[7] Most courts have held that conclusory allegations of a RICO conspiracy are legally insufficient. *Chambers Devel. Co., v. Browning-Ferris Industries*, 590 F.Supp. 1528 (W.D.Pa.1984); *Alfaro v. E.F. Hutton & Co., Inc.*, 606 F.Supp. 1100 (E.D.Pa.1985); *Van Schaick v. Church of Scientology of California, Inc.*, 535 F.Supp. 1125 (D.Mass.1982). Further, the complaint fails to allege an agreement, which is the essential element of any conspiracy charge. Finally, given that the plaintiff has not opposed the dismissal of the RICO conspiracy counts as to all but Creative Synergy and its employees, two more problems arise. The first is that Count 6 does not allege a conspiracy between any of the parties remaining in Count 6. Secondly, a corporation and its employees are not capable of engaging in a RICO conspiracy between them. *Landmark Savings & Loan v. Rhoades*, 527 F.Supp. 206 (E.D.Mich.1981); *Yancoski v. E.F. Hutton & Co., Inc.*, 581 F.Supp. 88 (E.D.Pa.1983); *contra, Garvey v. Servicemen's Group Life Ins.*, 584 F.Supp. 623 (E.D.Pa.1984).

To sum up at this point, Counts 1–5 are dismissed because the plaintiff has failed to properly allege an essential element of a RICO claim, while Count 6 is dismissed because it was dependent on the substantive RICO counts, and further, that conspiracy was not plead with sufficient specificity. The court now turns to the sufficiency of the state claims.

■ Defendant Hanson has raised a threshold issue by filing a "supplemental" motion to dismiss on the ground that this court lacks personal jurisdiction over it. Fed.R.Civ.P. 12(g) provides that if a party who makes a Rule 12 motion but omits from that motion any defense then available to it, those defenses are waived (with some exceptions set forth in Rule 12(h)). Where, as in this case, the defendant files a 12(b)(6) motion to dismiss without raising the defense of lack of personal jurisdiction, he waives any objection to that defect. *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir.1978). However, the circumstances of this case are such as to make the application of the general rule inappropriate.

When this action was first filed, this court had federal question jurisdiction over the subject matter, as the bulk of the claims arose under RICO, and there was not complete diversity between the parties. RICO authorizes nationwide service of process on defendants. 18 U.S.C. § 1965(d). Where Congress has provided for nationwide service of process, the "minimum contacts" analysis set forth in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny becomes inapposite, and due process requires only that the defendant have minimum contacts with the United States. *Haile v. Henderson National Bank*, 657 F.2d 816 (6th Cir.1981), *cert. denied*, 455 U.S. 949 (1982); *Fitzsimmons v. Barton*, 589 F.2d 330 (7th Cir.1979); *Dunham's, Inc. v. Nat. Buying Syndicate of Texas*, 614 F.Supp. 616 (E.D.Mich.1985); *Clement v. Pehar*, 575 F.Supp. 436 (N.D.Ga.1983).

■ Defendant Hanson is a Massachusetts corporation, and obviously has the

---

7. "Defendants CRC, Hanson, Newman and Delta Computech conspired with defendants Van Brocklin, Stewart, Mannings, Chalmers and Creative Synergy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d)."

requisite minimum contacts within the United States to allow this court to exercise personal jurisdiction over it pursuant to 18 U.S.C. § 1965(d). Thus, this court is persuaded by the defendant's argument that the defense of absence of personal jurisdiction was not available to it when the original Rule 12(b)(6) motion was filed. The issue of personal jurisdiction in the form of minimum contacts with the forum only became available as a defense when the plaintiff dismissed the sole nondiverse party, and also decided not to oppose Hanson's motion to dismiss the RICO claims, reducing the action to a diversity case involving state claims. Thus Hanson's supplemental motion to dismiss is not barred by Rule 12(g), and the court now turns to the merits of the personal jurisdiction issue.

The general personal jurisdiction statute over corporation under Michigan law provides:

> The existence of any of the following relationships between a corporation and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise general personal jurisdiction over the corporation and to enable such courts to render personal judgments against the corporation.
> (1) Incorporation under the laws of this state.
> (2) Consent, to the extent authorized by the consent and subject to the limitations provided in Section 745.
> (3) The carrying on of a continuous and systematic part of its general business within the state.

M.C.L.A. § 600.711. Michigan courts have interpreted state law to extend the jurisdiction of courts to their "full potential" and should be considered co-extensive with the Due Process limitations of the Federal Constitution. *Sifers v. Horen*, 385 Mich. 195, 198, 188 N.W.2d 623 (1971).

■ The Due Process Clause of the fourteenth amendment permits personal jurisdiction over a defendant in any state with which the defendant has "certain minimum contacts ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *In-*

*ternational Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). A court has not exceeded its powers where the defendant has "purposefully availed himself of the privilege of conducting activities within the forum state," *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), or has "purposefully directed" his activities at the forum state. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984). In judging minimum contacts, a court properly focuses on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). Where the court seeks to exercise its jurisdiction over a cause of action not related to the defendant's contacts in the forum state, i.e. general personal jurisdiction, due process is not offended so long as there exist the requisite minimum contacts. *Helicopteros v. Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). After reviewing the facts of this case, the court concludes that it may properly exercise personal jurisdiction over Hanson.

The affidavits supplied by the defendant reveal the following information. Hanson began doing business in 1980, and was incorporated in the state of Massachusetts in 1981. It does not maintain an office, own property, employ an agent or any other person in Michigan. The majority of its sales occur in the New England states. However, since its incorporation in 1981, an average of slightly over 2% of its total sales have occurred in Michigan during each year of its existence, with a figure of 3.7% being reached in 1983–84. In the six months preceding the filing of this case, Hanson transacted approximately $50,000 of business in Michigan, most of it with the plaintiff.[8] Hanson's business in Michigan was conducted through the mails and by telephone. At least one salesperson employed by Hanson had telephone dealings with the vice-president of the plaintiff 25–30 times a year for several years.

■ Where the defendant has been carrying on in the forum a "continuous and systematic, but limited, part of its general

---

8. The affidavits do not disclose what percentage of its total business this figure comprises.

business," personal jurisdiction may be exercised over it. *Perkins v. Benguet Mining Co.*, 342 U.S. 437, 438, 72 S.Ct. 413, 414, 96 L.Ed. 485 (1952). Here, the defendant has carried on a significant, though small, percentage of its business in Michigan during every year of its existence. Its sales in Michigan have been continuous, not sporadic. The relatively large volume of telephone dealings between the plaintiff and defendant is also significant in determining that the defendant "purposefully availed itself of the privilege of conducting business in Michigan, such that it would be reasonable to subject it to the burdens of litigation in this forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The defendant in *Burger King*, a Michigan resident, argued that personal jurisdiction could not be exercised against him in Florida because he never entered the forum state and all contacts with Florida had been by mail or telephone from Michigan. The Supreme Court emphatically rejected the notion that physical presence was a prerequisite for the exercise of personal jurisdiction.

> Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there. [Citations omitted].

*Id.* 105 S.Ct. at 2184. It is the court's conclusion that Hanson has "purposefully directed" its efforts toward Michigan, and has carried on a systematic and continuous business in this forum, such that it is appropriate for this court to exercise jurisdiction over Hanson under both Michigan law and due process.[9]

■ Turning to the merits of the state claims, the court will first address the motions to dismiss Count 8, which charges the defendants with fraud. Fed.R.Civ.P. 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This is an exception to general rule of notice pleading set forth in Fed.R. Civ.P. 8, which requires only a short and plain statement of the claim. Although this is a diversity case, and the substance of fraud claims must be decided under state law, the manner in which the fraud is alleged is still governed by Rule 9. *Miller v. Affiliated Financial Corp.*, 600 F.Supp. 987 (D.C.Ill.1984); *Clinton Hudson and Sons v. Lehigh Valley Co-op. Farms, Inc.*, 73 F.R.D. 420 (D.C.Pa.1977), *aff'd.* 586 F.2d 834. Upon a review of the pleadings, the court finds that the plaintiff has not met the requirements of Rule 9(b) as to defendants Hanson, Delta and CRC.

■ The substance of Count 8 consists of only one paragraph: "The acts of defendants as referred to in paragraphs 12 through 26 of plaintiff's complaint constitute fraud." Paragraph 12 through 21 describe the activities of defendants Creative Synergy and its employees leading to the alleged theft of the computer list on January 17, 1985. Paragraph 22, 23, and 24 state that in the fall of 1985, the list was sold to Delta, Hanson and CRC, respectively, all of the defendants having actual or constructive knowledge of the illicit nature of the product. The conclusory allegation that buying this list several months after its alleged theft constitutes fraud does not state the circumstances constituting the fraud with particularity. There are absolutely no facts alleged which indicate that these defendants knew the list was stolen, or that they had anything to do with its theft. Rule 9(b) requires that at a minimum the plaintiff must allege the time, place, and contents of the misrepresentations upon which it relied. *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th

---

**9.** The plaintiff moved for sanctions pursuant to F.R.Civ.P. 11 and 28 U.S.C. § 1927 in response to Hanson's supplemental motion to dismiss on jurisdictional grounds. The court finds that Hanson's motion had an objectively reasonable factual and legal basis, and was not frivolous so as to justify invoking this court's statutory or equitable powers to impose sanctions.

Cir.1984). As to these defendants, the plaintiff has not approached this standard.

■ Count 8 also does not state a cause of action for fraud even under the lenient pleading standards of Rule 8. To sustain an action for common law fraud under Michigan law, it must appear that 1) there was a material representation by the defendant that was false; 2) the defendant knew it was false when he made it or made it recklessly without any knowledge of its truth and as a positive assertion, 3) the defendant made it with the intention that it should be acted upon by the plaintiff; 4) plaintiff acted upon it and 5) thereby suffered injury for which he sues. *Eaton Corp. v. Easton Associates, Inc.*, 728 F.2d 285, 292 (6th Cir.1984). While it is not necessary that each and every element of an action must be alleged with precision under Rule 8, the plaintiff has not alleged even one element (other than damages) of this cause of action, and has not alleged a single fact against Hanson, Delta or CRC from which these elements could be inferred.

■ Turning to defendants Creative Synergy and its employees, the plaintiff has sufficiently pleaded fraud both under Rule 9(b) and Michigan substantive law. In paragraphs 12 through 21, the plaintiff sets forth specific allegations that Creative Synergy induced the plaintiff to enter into a consulting relationship with it for the purpose of stealing the confidential information.

Count 7, which alleges that all the defendants misappropriated trade secrets in violation of Michigan common law, sufficiently states this cause of action and cannot be dismissed on the pleadings.

Defendant CRC also filed a cross-claim against defendants Creative Synergy, and its employees, Van Brocklin, Stewart, and Mannings. The cross-claim incorporates by reference the principal plaintiff's complaint. In addition, it alleges CRC entered into a contract with Stewart to purchase the customer list which it believed Stewart had a lawful right to sell, and that if the plaintiff's allegations of fraud and trade secret theft are true, Stewart breached this contract. Creative Synergy and Manning only have filed a motion to dismiss the cross-claim.

CRC concedes that its pleading rests entirely upon the validity of the principal complaint, and that to the extent the plaintiff's complaint is deficient, so its claims must be dismissed. Accordingly, any of CRC's claims relying upon Counts One through Six of the principal complaint are dismissed. Any claims arising out of Count Seven are also dismissed, as that charges misappropriation of trade secrets. To the extent trade secrets have been misappropriated, they belong to the principal plaintiff and not to CRC, one of the recipients of the putative secrets.

CRC's remaining substantive allegation is that of fraud against Creative Synergy and its employees. Paragraph Ten of the cross-complaint states that if the plaintiff's allegations of fraud prove true, they also constitute fraud against CRC. This court has already held that Count 8 of the principal complaint plead with sufficient specificity, in paragraph 12 through 21, fraud against Creative Synergy and its employees. Count 8 does not, however, plead any facts which would support a claim of fraud by CRC against Creative Synergy. Nor is there a single factual allegation of fraud against Creative Synergy or Manning in CRC's cross-complaint. The only independent allegations of misconduct contained in the cross-complaint are specifically directed against Stewart in the breach of contract count, in which neither Creative Synergy or Manning are mentioned. CRC's cross-complaint of fraud against Creative Synergy and Manning is not plead with the specificity required by either federal or state law, and must be dismissed as to those two defendants.

■ The final claim of CRC's cross claim is for indemnification and contribution. Under Michigan law, indemnity permits an innocent party who has been held vicariously liable for passive negligence to recover from the one who is actively negligent, but is unavailable to those whose liability is based upon their own active negligence. *Wear v. Webb Co.*, 572 F.Supp. 1257 (W.D.Minn.1983). The party seeking indemnity must plead and will have to prove freedom on its part from personal

fault. *Brown v. Intern. Union, United Auto, Etc.*, 85 F.R.D. 328 (W.D.Mich.1980). In this case, the only count remaining against CRC in the principal case is for misappropriation of trade secrets. Since CRC can only be found liable on this count if it engaged in active misconduct, the remedy of indemnity would be unavailable to it.[10]

In sum, the court grants the defendants' motions in toto as to Counts 1 through 6, and grants in part their motions as to Counts 7 and 8, and grants defendants Creative Synergy's and Manning's motion to dismiss CRC's cross-claim against them, except as to the statutory contribution claim. Accordingly, Counts 1 through 6 are dismissed as to all defendants, Count 8 is dismissed as to defendants Hanson, Delta and CRC only and CRC's cross-claim is dismissed as to Creative Synergy and Manning only, except as to CRC's right to contribution.[11]

IT IS SO ORDERED.

---

**10.** The movants, Creative Synergy and Manning, have not challenged CRC's right to contribution pursuant to M.C.L.A. § 600.2925a.

**11.** Defendant Chalmers also attacked the sufficiency of process. In response, the plaintiff provided the court with a copy of the service with a proper return showing. The court finds nothing improper about the service, and has not been provided with any sworn testimony which would lead to a contrary result.